# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 03-3300 & 03-3506

STEVEN LEIPZIG,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*


AIG LIFE INSURANCE COMPANY,

*Defendant-Appellee, Cross-Appellant.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 9154—**Milton I. Shadur**, *Judge.*

———————

ARGUED FEBRUARY 23, 2004—DECIDED MARCH 25, 2004

———————


Before BAUER, EASTERBROOK, and KANNE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* The position of "chief dealer" at the Chicago Mercantile Exchange is a stressful job. After suffering chest pains that led to an angioplasty, Steven Leipzig (then 46 years old) concluded that the strain was too much for his heart and applied for permanent disability benefits. His physicians told AIG Life Insurance Company, which administers the long-term disability portion of the Exchange's ERISA welfare-benefit plan, that Leipzig has coronary artery disease, hypertension, and gout, and that although these conditions have been con-

trolled by medication he should not do high-pressure work. AIG denied his application, and the district court concluded that this decision is not arbitrary or capricious.

Leipzig leads with a request for a less deferential judicial role. AIG's policy contains a grant of discretionary power that satisfies the clarity requirement articulated in *Herzberger v. Standard Insurance Co.*, 205 F.3d 327 (7th Cir. 2000). The policy says: "In making any benefits determination under the Policy, the Company shall have the discretionary authority both to determine your eligibility for benefits and to construe the terms of the Policy." It is hard to be clearer. This sort of language leads to deferential judicial review. See *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). By granting discretion to AIG, this plan puts decisions in the hands of medical specialists (which federal judges and juries assuredly are not) and curtails the cost of litigation, which makes it possible to provide workers with better benefits on a given budget.

Still, Leipzig insists that AIG suffers from a conflict of interest, because like any private entity it strives to keep costs low, which creates the temptation to deny borderline claims. That's true, but the Mercantile Exchange knew this when it contracted with AIG. Courts have no more authority to override the agreed terms than they would so say that, because of AIG's tendency to serve its own interest, benefits must be set 10% higher to compensate, or the definition of "disability" be made more capacious so that employees win more of the close calls. For all we know, this policy already contains such adjustments to compensate employees for the risk of self-interested behavior. After all, the Mercantile Exchange has no reason to deceive its employees about the quality of fringe benefits on offer; that would just besmirch its reputation and make it harder to hire good people in competition with other financial institutions. One might as well say that because a health maintenance organization has an incentive to skimp on care (for it

does not collect extra fees for additional medical services), the judiciary must intervene to force HMOs to offer more or better care than they have promised by contract. Yet the Supreme Court held in *Pegram v. Herdrich*, 530 U.S. 211 (2000), that HMOs' well-known incentive to shave the costs of care does not justify "correction" under the banner of ERISA. The choice between fee-for-service and HMO-style incentives, neither of them perfect, is left to employers who must compete for good workers using a combination of salary and fringe benefits. Just so here.

What is more, as we observed in *Mers v. Marriott International Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1020 (7th Cir. 1998), most insurers are well diversified, so that the decision in any one case has no perceptible effect on the bottom line. There is correspondingly slight reason to suspect that they will bend the rules. Unless an insurer or plan administrator pays its staff more for denying claims than for granting them, the people who actually implement these systems are impartial. See *Perlman v. Swiss Bank Corp.*, 195 F.3d 975, 980-81 (7th Cir. 1999). Leipzig does not contend that AIG has jiggered the incentives of the people who evaluated his claim. Whatever small scope a federal court may have to "improve" the welfare-benefit promises employers make under ERISA does not come into play when the actors who handle the claim are disinterested in the outcome. Like the district court, then, we ask only whether AIG's decision was arbitrary or capricious.

Like the district court, we conclude that it was neither. Many persons with serious heart conditions work at stressful jobs for years without ill effects. Think of President Eisenhower, Vice President Cheney, and Associate Justice Stevens. AIG concluded that Leipzig is in the same category. Leipzig submitted the reports of several physicians who concluded that he should not hold a high-stress job. AIG sent the file to Costas Lambrew, an independent

cardiovascular specialist who concluded that medical data show that Leipzig's blood pressure is under control and his "coronary artery disease stable and asymptomatic". Dr. Lambrew concluded that Leipzig could return to work with no restrictions. AIG adopted this view, observing that Leipzig's own doctors likely had taken their more conservative position at his request. Most of the time, physicians accept at face value what patients tell them about their symptoms; but insurers such as AIG must consider the possibility that applicants are exaggerating in an effort to win benefits (or are sincere hypochondriacs not at serious medical risk). After Leipzig submitted more information to back up his position, AIG sent him to see Alan Kogan, another independent specialist. Dr. Kogan not only evaluated Leipzig's medical records but also administered tests, from which he concluded that Leipzig is not disabled even from nerve-racking jobs—though Kogan added that less stress remains better for Leipzig's health (or, for that matter, anyone else's). So AIG reiterated its denial and stuck to it after still a third round of review at Leipzig's behest. Leipzig contends that the balance of evidence in the medical records favors his position, but on deferential review that's not the right question. The insurer's decision prevails if it has rational support in the record—and, given the views of Drs. Lambrew and Kogan, that standard is met, and to spare.

AIG has filed a cross appeal. While evaluating Leipzig's claim, AIG paid disability benefits under a reservation of the right to recoup if, in the end, Leipzig is not entitled to the money. Thus AIG asked the district court to order Leipzig to return what he had received, if (as the district court ultimately held, and we have now affirmed) Leipzig remains able to perform his job at the Mercantile Exchange. But the district court dismissed the counterclaim for want of subject-matter jurisdiction, ruling that because a demand for money is a "legal" rather than an "equitable" claim, it

does not fall within ERISA's grant of jurisdiction for claims *by* ERISA fiduciaries, as opposed to claims against them. See *Leipzig v. AIG Life Insurance Co.*, 257 F. Supp. 2d 1152 (N.D. Ill. 2003), discussing §502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), and *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002).

It is not clear to us why it matters whether AIG could have filed a stand-alone claim under §502(a)(3). Leipzig's suit is securely within the subject-matter jurisdiction of the district court, and a compulsory counterclaim does not require an independent grant of jurisdiction. See *Moore v. New York Cotton Exchange*, 270 U.S. 593, 609 (1926). Even a permissive counterclaim, if part of the same case or controversy (a condition met here), may be brought under the supplemental-jurisdiction statute, 28 U.S.C. §1367(a), without an independent basis of jurisdiction. Yet AIG neither characterizes its counterclaim as compulsory nor relies on §1367(a). It appears to think that supplemental jurisdiction is limited to claims arising under state law, and thus that it is of no assistance because a state-law recoupment claim would be preempted by ERISA. This is a puzzling assumption; §1367(a) does not distinguish between claims under federal law and those under state law. Although the general federal-question jurisdiction in 28 U.S.C. §1331 leaves few occasions on which it is necessary to invoke supplemental jurisdiction to present a federal claim, when those occasions arise §1367(a) should supply what is needed. See *Jones v. Ford Motor Credit Co.*, 2004 U.S. App. LEXIS 1819 (2d Cir. Feb. 5, 2004). Still, the fact remains that AIG has not invoked §1367, and "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 810 n.6 (1986). See also *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("the party who brings a suit is master to decide what law he will rely upon").

Section 502(a)(3) creates federal jurisdiction over equitable claims by pension and welfare plans. *Great-West* holds that, as a rule, a plan's demand to be reimbursed for benefits wrongly paid out is not such a claim; it is instead a quest for money damages and thus is legal rather than equitable. AIG wants money, not the return of the checks it issued to Leipzig or the contents of a segregated fund, and *Great-West* rejected the possibility of applying the "restitution" label to demands of this kind. The claim therefore is legal rather than equitable. See *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544 (7th Cir. 2003). All AIG says in response—other than to rely on Justice Ginsburg's dissent in *Great-West*, which can't carry the day in a court of appeals—is that, because it has a good claim under federal law, there *must* be federal jurisdiction. Why so? Until 1875 the federal courts had no federal-question jurisdiction at all. State courts were, and remain, empowered to entertain claims arising under federal law. Although today almost every federal claim can be heard in federal court under §1331, *Great-West* shows that there are still lacunae. AIG can pursue its claim in state court without encountering a defense of preemption; ERISA preempts state-law theories, not claims arising under federal law.

                                                        AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*