# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2483

ELVIS KOBS,

*Plaintiff-Appellant*,

v.

UNITED WISCONSIN INSURANCE COMPANY,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04 C 5—**John C. Shabaz**, *Judge.*

———————

ARGUED JANUARY 20, 2005—DECIDED MARCH 16, 2005

———————

Before FLAUM, *Chief Judge*, and BAUER and KANNE,
*Circuit Judges*.

BAUER, *Circuit Judge*. Plaintiff-appellant Elvis Kobs suf-
fered injuries in January 2002 when he fell off his roof while
removing Christmas ornaments. Following the accident,
Kobs received short-term disability benefits from his
disability insurance carrier, defendant-appellee United
Wisconsin Insurance Company ("UWIC"), but his subse-
quent application for long-term disability benefits was
denied. After an unsuccessful appeal of that determination,
Kobs filed suit in state court, and UWIC removed the case to

federal court, as the plan at issue is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* The district court granted summary judgment in favor of UWIC. We affirm.

## I.  Background

Prior to his January 2002 fall, Kobs was a business manager at Bernard's Northtown car dealership in New Richmond, Wisconsin. This sedentary job required him to sit eighty percent of the day, stand twenty percent of the day, and lift up to five pounds. Kobs was a participant in a group disability insurance plan (the "Plan") issued by UWIC to Bernard's Northtown, and the Plan offered both short-term and long-term benefits. With regard to short-term benefits, the Plan states: "You are disabled if, because of illness or injury, you are unable to perform with reasonable continuity, the material duties of the occupation that you regularly perform for this group." The Plan generally provides long-term disability benefits when an insured is "Totally Disabled," defined, in relevant part, as follows:

> **"TOTAL DISABILITY"** and **"TOTALLY DISABLED"** means that due to Injury and/or Illness:
>
>> 1. The Insured cannot perform the material duties of his or her regular occupation during the Elimination Period and the following 24 months of the Benefit Period; and
>>
>> 2. After 24 months of the Benefit Period, the Insured cannot perform any of the material duties of any gainful occupation for which he/she is or may be reasonably fitted by education, training, or experience.

The Plan also confers discretion upon UWIC to determine eligibility for benefits:

**BENEFIT DETERMINATION**

> Benefits under this policy will be paid only if United Wisconsin Insurance Company decides in its discretion that the Insured is entitled to them.

Kobs applied for short-term disability benefits immediately after the January 2002 accident. UWIC approved his application and paid him short-term disability from January 2, 2002, until July 4, 2002, when his short-term benefits were exhausted. Kobs then applied for long-term disability benefits. Kobs claimed that he could not perform the material duties of his regular occupation because he suffered from various conditions, most notably memory loss resulting from incidents in 1998 and 1999 and exacerbated by his fall in 2002. In an October 2002 letter, UWIC denied Kobs' claim for long-term disability benefits, explaining that "the medical information does not support an inability to perform the duties of your occupation, after July 4, 2002." After Kobs appealed the determination, UWIC received and reviewed additional medical information and then upheld the denial of benefits. The denial letter stated, "We lack objective medical evidence to support the numerous subjective complaints and find no basis for a physically disabling condition."

UWIC considered a number of medical opinions and records in arriving at its decision. The opinions weighing in Kobs' favor came from Dr. Neal Melby, his primary care physician, and Dr. Mary Fischer, a psychologist who saw Kobs on a referral from Dr. Melby. Dr. Melby opined on several occasions that Kobs was disabled both as a result of "musculoskeletal problems" (injuries to his back and legs) and as a result of cognitive disability, including memory loss. Dr. Fischer met with Kobs to evaluate his complaints of memory loss, headaches, and cognitive difficulties. After conducting psychological tests on Kobs, she concluded that he suffered "from deficits in executive functioning including

sequencing, planning, mental organization, and mental control" and "global memory deficits," and met "the criteria for a DSM-IV diagnosis of dementia due to traumatic brain injury." In addition, Dr. Thomas Reiser of the Midwest Spine Institute saw and evaluated Kobs in 1999, then reviewed Kobs' medical records in 2002 and stated that he had "a permanent partial disability of 4% to the body as a whole" under applicable workers' compensation law.

On the other side of the scale were the opinions of two orthopedic surgeons, two psychologists, a psychiatrist/neurologist, and a registered nurse. Dr. Nolan Segal, an orthopedic surgeon, performed an independent medical evaluation of Kobs in January 2003 and concluded that there was "no evidence [that Kobs] would be considered disabled from a musculoskeletal standpoint." Dr. Richard Silver, also an orthopedic surgeon, reviewed Kobs' medical file at UWIC's request and concluded that Kobs was "fit for duty at a sedentary light capacity . . . from an orthopedic perspective." Dr. Mary Sullivan, a psychologist who saw Kobs on a referral from Dr. Melby, performed a neuropsychological evaluation of Kobs in August 2003 and concluded that Kobs was not "cognitively disabled or memory impaired." Dr. Sullivan also noted that "there are numerous implausible aspects of his performance which raise questions about the effort he exerted throughout the evaluation." Dr. Reginald Givens, a psychiatrist and neurologist hired by UWIC to review Kobs' file, concluded that "Kobs does not have a significant impairment that would impair him from performing essential functions of his employment." Dr. Philip Sarff, a psychologist hired by UWIC, evaluated Kobs in March 2003 and opined that Kobs' "pattern of deficits is not consistent with degenerative dementia, or dementia due to brain injury." In addition, Sarff noted that "there is strong evidence that [Kobs] consciously or unconsciously exaggerated symptoms for this evaluation." The final opinion came from Francine Blaha, a nurse who reviewed Kobs' entire file

at UWIC's request prior to its decision on Kobs' appeal. Blaha recommended that UWIC uphold the denial of long-term disability benefits because "the objective data does not even come close to the massive subjective complaints of the claimant."

## II. Discussion

Kobs leads with a challenge to the district court's decision to apply the arbitrary and capricious standard to review UWIC's benefits determination. Citing case law from other circuits, Kobs argues that UWIC has an inherent conflict of interest due to its dual role as insurer and administrator of the Plan. *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377 (3d Cir. 2000) (collecting cases). We have considered and rejected similar arguments on numerous occasions, most recently in *Leipzig v. AIG Ins. Co.*, 362 F.3d 406 (7th Cir. 2004), and we see little reason to revisit those opinions or add to their analysis. As we explained in *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1020 (7th Cir. 1998), "[w]e presume that a fiduciary is acting neutrally unless a claimant shows by providing specific evidence of actual bias that there is a significant conflict." Because Kobs has not presented any specific evidence of a conflict of interest and because the Plan contains a grant of discretionary authority that closely tracks the "safe harbor" provision we drafted in *Herzberger v. Standard Ins. Co.*, 205 F.3d 327 (7th Cir. 2000), we agree with the district court that reversal is only warranted if the administrator's decision was arbitrary or capricious. Under the arbitrary and capricious standard, we do not ask whether the administrator reached the correct conclusion or even whether it relied on the proper authority. *Cvelbar v. CBI Ill. Inc.*, 106 F.3d 1368, 1379 (7th Cir. 1999). Instead, the only question for us is whether the administrator's decision was completely unreasonable.

*Manny v. Cent. States, Southeast and Southwest Areas Pension and Health and Welfare Funds*, 388 F.3d 241, 243 (7th Cir. 2004).

Kobs argues that UWIC's decision was arbitrary and capricious because his treating physician, Dr. Melby, concluded that he was disabled. This argument is unpersuasive for a number of reasons. First, ERISA does not require plan administrators to accord special deference to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, L. Ed. 2d 1034 (2003) (rejecting Ninth Circuit's decision to import the "treating physician" rule from the Social Security context). Second, Kobs makes no effort to address the medical opinions that undermine Dr. Melby's conclusions and support UWIC's determination. Two orthopedic surgeons rejected Dr. Melby's opinion that Kobs was totally disabled due to "musculoskeletal problems," and concluded that he was not disabled from a musculoskeletal standpoint. It makes little sense to give great deference to Dr. Melby's opinion about Kobs' "musculoskeletal problems" when it is contradicted by two physicians who specialize in musculoskeletal injuries. *Black & Decker*, 538 U.S. at 832. In light of the opinions of the two specialists, it was neither arbitrary nor capricious for UWIC to conclude that Kobs' claimed physical impairments did not prevent him from performing the material duties of his sedentary job.

The medical evidence regarding Kobs' asserted cognitive impairments also supported UWIC's denial of long-term disability benefits. Dr. Melby referred Kobs to both Dr. Fischer and Dr. Sullivan for psychological testing. While Dr. Fischer diagnosed Kobs with dementia due to traumatic brain injury and global memory deficits, Dr. Sullivan strongly disagreed, concluding that Kobs was not cognitively disabled or memory impaired. Dr. Sullivan, who was not on UWIC's payroll, was also the first of three medical experts who questioned whether Kobs was sandbagging during the tests:

> [T]here are numerous implausible aspects of his performance . . . . First of all, Mr. Kobs' IQ, as measured here, was found to be 80, that is, just barely within the low average range. This is simply not believable. There is no possible way that a head injury of the severity described by Mr. Kobs could have lowered his IQ to this level. Furthermore, there were findings within the IQ testing that were also highly unlikely. Mr. Kobs obtained a score on Vocabulary, which measures knowledge of vocabulary, that was in the low average range. This seems unusually low for a man who finished two years of Boston College and who used to make speeches and sell cars . . . . Furthermore, knowledge of vocabulary is pretty invulnerable to the effects of a mild head injury . . . . Third, Mr. Kobs got just one item right on Picture Arrangement—the first item. He then failed the next four items. This is a *highly unusual* performance, even for people who are mentally retarded. Mr. Kobs, even given how poorly he performed, is clearly not mentally retarded.

Ex. M to Szemborski Aff. (emphasis in original). Psychologist Philip Sarff concurred with Dr. Sullivan's assessment that Kobs was exaggerating his symptoms. Dr. Givens and Francine Blaha, a psychiatrist and nurse, respectively, also agreed that Kobs' complaints about cognitive impairments did not match the objective medical evidence. The foregoing medical opinions provided UWIC with reasonable support for its denial of Kobs' long-term disability application.

Kobs also describes the Plan's short-term disability definition and long-term disability definition as "nearly identical," arguing that the disability finding for short-term benefits should have led to a disability finding for long-term benefits. This argument ignores the plain language of the Plan. A Plan participant is "Totally Disabled" under the Plan and thus entitled to long-term disability if (1) he cannot perform the material duties of his position for 30 months

(the elimination period plus the benefit period) *and* (2) he cannot perform any of the material duties of any gainful occupation for which he is reasonably suited *after* those 30 months. In contrast, a Plan participant is entitled to short-term benefits if he is unable to perform the material duties of his position during the short-term benefits period. Thus, the provisions are different because they are premised on different time frames and because a worker that qualifies for short-term benefits may not be entitled to long-term benefits if he possesses the ability to perform the duties of *another* occupation for which he is suited. As a consequence, it was not arbitrary and capricious for UWIC to interpret the Plan in a way that granted Kobs short-term benefits and denied him long-term benefits.

A more fundamental problem with Kobs' arguments is that he fails to account for the deferential standard of review that we apply to UWIC's decision. UWIC gathered and reviewed the pertinent medical information, hired a number of physicians to evaluate Kobs and review his medical files, and made an informed judgment about Kobs' long-term disability application that coincided with the bulk of the medical evidence. When Kobs appealed the initial determination, UWIC accepted additional medical information submitted by Kobs, had another psychologist evaluate Kobs, and hired a nurse to review Kobs' entire file. Given this exhaustive process, UWIC's reasonable conclusions, and the absence of evidence of bad faith or conflict of interest, there is no basis to disturb UWIC's benefits determination.

### III.  Conclusion

For the reasons stated herein, we AFFIRM the decision of the district court.

No. 04-2483 9

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*