# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2342

HUGO DIAZ,

*Plaintiff-Appellant,*

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 2702—**Charles R. Norgle, Sr.**, *Judge.*

———————

ARGUED JANUARY 3, 2005—DECIDED SEPTEMBER 20, 2005

———————

Before BAUER, EASTERBROOK, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* This case involves Hugo Diaz's pursuit of long-term benefits under his company's group insurance disability plan. Prudential Insurance Company of America, the plan's underwriter, denied Diaz's application, both initially and through several rounds of appeal. Diaz turned to the courts, but the district court concluded that the plan gave the administrator discretionary authority to determine participant eligibility. It therefore reviewed Prudential's decision under the deferential "arbitrary and capricious" standard and concluded that Prudential was entitled to summary judgment. We conclude that deferential review was not appropriate given the

language of this plan and thus remand for further proceedings.

## I

Diaz began working in 1998 as a computer programmer analyst at Bank One in Chicago. As a Bank One employee, he participated in a group disability insurance plan underwritten by Prudential. The plan included a long-term disability component (LTD Plan) that provided benefits to a participant who was unable to perform the essential functions of his or her regular occupation as a result of an injury or illness.

In 2000, Diaz began experiencing persistent lower back pain and was diagnosed with degenerative disc disease and radiculopathy. For about two years, he underwent a series of non-operative medical treatments that included lumbar epidural steroid injections, physical therapy, and pain medication. Because his condition was not improving and he was in considerable pain, he stopped working on January 31, 2002. On February 4, on the recommendation of his physician, Diaz underwent a lumbar fusion procedure with hardware implantation to correct an annular tear at the lumbosacral joint, or L5-S1. Although post- operative examinations showed that the hardware alignment was satisfactory and there were no neurological deficits in his lower extremities, Diaz continued to report varying levels of pain in his back and legs. At times, Diaz reported that he felt hardware movement in his back, but each time he had this checked out, X-rays revealed that no movement had occurred and that the fusion was consolidating satisfactorily. After months of ineffective physical therapy and pain medication, he decided that he could not return to work.

Diaz submitted a claim for benefits under the LTD Plan on July 22, 2002, alleging that the back pain had rendered him disabled as of February 4, 2002. He supported his

application with several doctors' notes expressing the opinion that Diaz's condition prevented him from sitting for more than fifteen to twenty minutes. Prudential denied the claim on August 27, for the stated reason that Diaz's reported inability to perform his job (which it considered a sedentary one) was not consistent with the medical evidence. Diaz sought reconsideration of the rejection on October 22 and submitted additional medical evidence in support of his claim, but Prudential upheld its negative decision on January 22, 2003. Diaz then filed a second appeal on February 4. This time, Prudential submitted Diaz's medical documentation to its medical consultant, Dr. Gale Brown, for review. Although Dr. Brown did not personally examine Diaz, he opined based on Diaz's medical records that the clinical and diagnostic evidence relating to Diaz's lumbar spine condition did not support Diaz's reports of persistent pain. He concluded that Diaz's condition did not prevent him from performing his job on a full-time basis. Dr. Brown noted, however, that there were non-physical factors that were having an adverse impact on Diaz's ability to engage in gainful employment, including his anxiety over losing his job, depression, and opioid dependency, but Diaz was not seeking benefits on any of those bases. On April 16, 2003, Prudential again upheld its decision denying Diaz benefits.

Diaz filed this action in district court on April 22, 2003, under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), seeking an award of benefits under the LTD Plan. On May 12, 2004, the district court granted summary judgment in favor of Prudential, finding that Prudential's denial of benefits was not arbitrary or capricious. On appeal, Diaz contends that the court should have reviewed Prudential's decision *de novo*. In the alternative, he asserts that Prudential's decision is unsupportable even under the deferential standard of review and urges this court to award benefits.

## II

The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989). Under *Bruch*, plenary review is the default standard. We have held that plenary review is required when the plan documents contain no indication of the scope of judicial review, because "it is a natural and modest extension of *Bruch*, or perhaps merely a spelling out of an implication of it, to construe uncertain language concerning the scope of judicial review as favoring plenary review as well." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir. 2000). If a plan "is going to reserve a broad, unchanneled discretion to deny claims, [plan participants] should be told this, and told clearly." *Id.* at 333. To decide whether a plan confers discretion on the administrator, as *Bruch* and *Herzberger* use the term, we review the language of the plan *de novo* as we would review the language of any contract. *Ramsey v. Hercules Inc.*, 77 F.3d 199, 205 (7th Cir. 1996).

*Herzberger* holds that the critical question is notice: participants must be able to tell from the plan's language whether the plan is one that reserves discretion for the administrator. We concluded that:

> [the] mere fact that a plan requires a determination of eligibility or entitlement by the administrator, or requires proof or satisfactory proof of the applicant's claim, or requires both a determination and proof (or satisfactory proof), does not give the employee adequate notice that the plan administrator is to make a judgment largely insulated from judicial review by reason of being discretionary.

*Herzberger*, 205 F.3d at 332. The reason for this rule is a practical one. All plans require an administrator first to determine whether a participant is entitled to benefits before paying them; the alternative would be to hand money out every time someone knocked on the door, which is obviously out of the question. By itself, therefore, the fact that an administrator is deciding on a case-by-case basis who is entitled to benefits does not reveal whether a plan does or does not reserve "discretion" to the administrator. Similarly, a plan's requirement that an applicant submit "satisfactory proof of entitlement" does not necessarily mean that a plan administrator has discretion, because every plan requires submission of documentary proof, and the administrator is entitled to insist on something like a doctor's note rather than one's latest telephone bill. See *id.*; see also *Perugini-Christen v. Homestead Mortgage Co.*, 287 F.3d 624, 626-27 (7th Cir. 2002).

Instead, plan documents must go further. If a plan wishes to insulate its decision to deny benefits from plenary review, the surest way to do so (at least in this Circuit) is by including language that either mimics or is functionally equivalent to the "safe harbor" language we have suggested: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." *Herzberger*, 205 F.3d at 331 (internal quotation marks omitted). While we have strongly recommended that plans adopt this language, its absence does not compel the conclusion that the administrator does *not* have discretion. *Id.* ("[T]here are no 'magic words' determining the scope of judicial review of decisions to deny benefits," thus "we forbear to make our 'safe harbor' language mandatory.").

In the final analysis, a plan must indicate "with the requisite if minimum clarity that a discretionary determination is envisaged." *Id.* But what is that minimum point?

One could imagine an almost infinite set of verbal formulations, and our prior cases have approached this question by drawing very fine linguistic lines. Thus, for example, the plan in *Donato v. Metropolitan Life Insurance Co.*, 19 F.3d 375 (7th Cir. 1994), stated that disability benefits would be paid "upon receipt of proof," and that "all proof must be satisfactory to us [the plan administrator]." 19 F.3d at 379 (internal quotation marks omitted). In addition, the plan required that proof of claim "must describe the event, the nature and the extent of the cause for which a claim is made; it must be satisfactory to us." *Id.* (internal quotation marks omitted). Similarly, the plan in *Bali v. Blue Cross & Blue Shield Ass'n*, 873 F.2d 1043 (7th Cir. 1989), spoke of "such true and correct information as the Committee may *reasonably* request," and noted that disability was "determined on the basis of medical evidence satisfactory to the Committee." *Id.* at 1047 & n.6. We found in both *Donato* and *Bali* that the use of the phrase "satisfactory to us" or its equivalent was enough to show that the plan conferred the degree of discretion on the administrator that justified deferential review under *Bruch.*

Prudential argues that its plan is functionally identical to the ones in *Donato* and *Bali.* Agreeing with it, the district court found that two sections of the LTD Plan, taken together, support a finding of discretion. The first appears in a section entitled "How does Prudential Define Disability?", which says "You are disabled when *Prudential determines* that: you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and you have 20% or more loss in your indexed monthly earnings due to that sickness or injury." (Emphasis added.) The second is in the section addressing "Long Term Disability Coverage—Claim Information," which states "[w]e may request that you send proof of continuing disability, *satisfactory to Prudential*, indicating that you are under the regular care of a doctor." (Emphasis

added.) The district court thought, not unreasonably, that the phrase "satisfactory to Prudential" was legally equivalent to the "satisfactory to us" language in *Bali* and *Donato*, and thus that the same outcome followed: review under *Bruch*'s deferential standard.

The problem with the district court's analysis is not something for which that court bears full responsibility. The court correctly recognized that *Donato* and *Bali* point in the direction it took. Indeed, it might have added that a number of other circuits also appear to seize on the phrase "satisfactory *to us*" as a way of making the cut that *Bruch* demands. See, *e.g.*, *Brigham v. Sun Life of Canada*, 317 F.3d 72, 81 (1st Cir. 2003) ("Circuits that have considered similar language view the 'to us' after 'satisfactory' as an indicator of subjective, discretionary authority on the part of the administrator, distinguishing such phrasing from policies that simply require 'satisfactory proof' of disability without specifying who must be satisfied"); *Ferrari v. Teachers Ins. and Annuity Ass'n*, 278 F.3d 801, 806 (8th Cir. 2002) (finding a plan to confer sufficient discretion because it "specifies that the employee must provide written proof of continued total disability" and "that such proof must be satisfactory to [the plan administrator]"); *Nance v. Sun Life Assur. Co.*, 294 F.3d 1263, 1267-68 (10th Cir. 2002) (" 'Satisfactory to Sun Life' . . . adequately conveys to the Plan participants and beneficiaries that the evidence of disability must be persuasive to Sun Life.").

*Donato* and *Bali* are not, however, the last word on the subject from this court. As we have already noted, *Herzberger* took a significantly different approach when it held that a requirement that the administrator determine eligibility, or that proof or satisfactory proof must be tendered before benefits will be given, does not give the employee adequate notice that "the plan administrator is to make a judgment largely insulated from judicial review by

reason of being discretionary." 205 F.3d at 332. Although we did not circulate *Herzberger* to the full court under Circuit Rule 40(e), subsequent developments, including this case, persuade us that we should now clarify the test we are using to decide whether *de novo* review or deferential review is proper. *Herzberger,* we conclude, adopts the preferable approach. There is a substantive difference between plans without discretion, for which the standard of review is *de novo* under *Bruch,* and those with discretion, for which review is deferential. The former plans reflect the fact that the applicant must meet the prescribed require- ments of the plan, through appropriate evidence. (Juries or judges deciding whether a contract has been breached have the same task: they must evaluate the evidence to see if the plaintiff should prevail, but they cannot rewrite the con- tract.) The latter plans communicate the idea that the administrator not only has broad-ranging authority to assess compliance with pre-existing criteria, but also has the power to interpret the rules, to implement the rules, and even to change them entirely. One can draw a useful analogy to the well-known *Chevron* standard used in review of agency action, under which courts defer to agency interpretations of gaps that Congress leaves in authorizing statutes, on the theory that those gaps or ambiguities are best seen as delegations of authority to fill in the blanks. See *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services,* 125 S. Ct. 2688, 2699 (2005) (discussing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984)). This implies as well that some aspects of plan administration might be subject to *de novo* review, while others might be entitled to deferential review.

No single phrase such as "satisfactory to us" is likely to convey enough information to permit the employee to distinguish between plans that do and plans that do not confer discretion on the administrator. And this is a matter that may well be of interest to employees considering where

to work: some may prefer the certainty of plans that do not confer discretion on administrators, while others may think that the lower costs that are likely to attend plans with reserved discretion are worth it. We must therefore ask *what* must be satisfactory to the plan's administrator: did the evidence comply with prescribed standards (*i.e.*, no discretion), or did the evidence comply with the plan administrator's subjective notions of eligibility, disability, or other terms in the plan (*i.e.*, discretion). Prudential's LTD Plan requires "proof of continuing disability, satisfactory to Prudential, indicating that [the claimant is] under the regular care of a doctor." This language does not alert the plan participant to the possibility that Prudential has the power to re-define the entire concept of disability, or regularity of physician care, on a case-by-case basis. Fairly read, it suggests only that the plan participant must submit reliable proof of two things: continuing disability and treatment by a doctor. In short, under Prudential's Plan, the only discretion reserved is the inevitable prerogative to determine what *forms* of proof must be submitted with a claim—something that an administrator in even the most tightly restricted plan would have to do.

In keeping with *Herzberger,* we conclude that the critical question is whether the plan gives the employee adequate notice that the plan administrator is to make a judgment within the confines of pre-set standards, or if it has the latitude to shape the application, interpretation, and content of the rules in each case. The Prudential Plan here falls under the former category, and thus the district court should have reviewed its application *de novo*. To the extent that the test applied in *Donato* and *Bali* is inconsistent with the approach we are now articulating, we hereby disapprove the former two cases. Because we are changing the way in which we ascertain the proper standard of review, we have circulated this opinion to all active judges under Circuit Rule 40(e). No judge voted to hear the

case *en banc.*[1]

## III

The judgment of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[1] Circuit Judge Rovner took no part in the consideration or vote on the Rule 40(e) circulation.

---