**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 13, 2005
Decided October 25, 2005

**Before**

Hon. William J. Bauer, *Circuit Judge*

Hon. Daniel A. Manion, *Circuit Judge*

Hon. Ann Claire Williams, *Circuit Judge*

No. 04-2821

| | |
|---|---|
| Ronald Walsvick, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Western District |
| | of Wisconsin |
|   *v.* | |
| | No. 03 C 0637 |
| CUNA Mutual Insurance Society, | |
| | Barbara B. Crabb, |
|     *Defendant-Appellee.* | *Chief Judge*. |

**O R D E R**

The CUNA Mutual Insurance Society employed Ronald Walsvick as a senior underwriter. While working at CUNA, Walsvick participated in CUNA's long-term disability ("LTD") plan. After having a heart attack, Walsvick submitted an LTD claim under the plan, citing work-related stress as the underlying source of his purported disability. CUNA denied the claim, and Walsvick sued. The district court granted CUNA summary judgment. Walsvick appeals. We affirm.

**I.**

Ronald Walsvick began working for the CUNA Mutual Insurance Society in 1972. Before 1997, Walsvick worked as a property and casualty specialist, which he identifies as a "low stress" position with "no decision-making authority." In 1997, CUNA promoted Walsvick to senior underwriter. Walsvick classifies this position as a "high stress" job, requiring him to make difficult insurance decisions about risk and

pricing in a competitive marketplace.

On July 1, 2001, Walsvick had a heart attack (his second, the first coming in 1992, i.e., before he moved to the "high stress" position). He had a successful angioplasty and was discharged from the hospital two days later. Soon afterwards, he entered a cardiac rehabilitation program, which a hospital cardiologist recommended. On August 1, 2001, Walsvick met with his primary physician, Dr. Orest Kostelyna, whose notes from the visit state that Walsvick was doing "okay" with his rehabilitation (cutting his tobacco intake to three cigarettes per day) but was "looking to discuss the option and the possibility of long term disability." Dr. Kostelyna's notes further state that "[i]f the family does decide to go on disability in the interim, they will call me and we will pursue accordingly."

Walsvick successfully completed his rehabilitation in early September 2001. Dr. Kostelyna's notes from a mid-September visit state that Walsvick was "doing well" (down to two cigarettes per day). Dr. Kostelyna also wrote that Walsvick "is going to be applying for disability, because of his stressful job, in an attempt to try to eliminate the stressors, which have typically prompted him to increase his cigarettes intake . . . ." Dr. Kostelyna added, "I will fill out his disability forms, and [we] will see how far this gets him."

The next day, September 19, 2001, Walsvick filed a claim with CUNA's LTD plan. In the doctor's portion of the claim form, Dr. Kostelyna said that Walsvick did not have any cardiac or physical impairments (i.e., no cardiac or physical limitations on his functional capacity). However, Dr. Kostelyna said that Walsvick had a "mental impairment," namely that he was "unable to engage in stress situations or engage in interpersonal relations." Dr. Kostelyna also added that "stress situations exacerbate [Walsvick's] cardiac condition." Additionally, in response to the form's inquiry about specific work restrictions, Dr. Kostelyna wrote "current job." (Why Walsvick did not seek to return to his former "low stress" job is not clear.)

Over the next twenty-three months, CUNA and Walsvick went back and forth with several rounds of denials and administrative appeals regarding his LTD claim. During the process, CUNA's ERISA Committee supplemented Walsvick's evidence with reports from two cardiologists, Drs. Paul Minton and Irvin Goldenberg, and a medical consultant, John Hewitt & Associates ("Hewitt"). Near the end of the process, Walsvick, through his counsel, attempted to clarify his claim as follows: "Mr. Walsvick has not made a claim that he is disabled by stress. His claim relates to his cardiac condition and resulting impairment."

Ultimately, on August 28, 2003, CUNA's ERISA Appeals Review Committee issued the final administrative decision, denying Walsvick's claim. The denial rested primarily on the opinions of Drs. Minton and Goldenberg. For his part, Dr. Minton issued three reports during the process: the first favoring a denial of benefits, the second favoring a grant of benefits, and the third a bit in between. Among other items

in his final report, Dr. Minton wrote: "Whether Mr. Walsvick will experience significant, disabling work stress on returning to his usual position as an underwriter [is] not a cardiac issue." Given Walsvick's clarification (quoted above) that his claim related to his cardiac condition, Dr. Minton's ultimate opinion, although muted, did lend support to the denial.

Dr. Goldenberg's opinion, on the other hand, provided strong support for the denial. Dr. Goldenberg did not mince words: "I see no reason why he cannot return to work. I am not convinced at all that the stress of work is any greater than the stress he relays in regards to his present family situation that he faces daily because he is not working. Also his financial problems and stress would be less if he were working. In the total scope of things there is no convincing evidence that long-term occupational stress would be a significant risk factor for progression of cardiac disease in this patient. Personally I think it would be good for this patient to go back to work, it is likely to help his self-esteem, his family situation, his financial situation and his overall quality of life. Clearly in my opinion, he has no contraindications to return to work from a cardiac standpoint."

Having exhausted his administrative remedies, Walsvick sued CUNA in state court, seeking damages under the Employee Retirement Income Security Act ("ERISA") and alleging, under Wisconsin law, breach of contract and breach of the duty of implied good faith and fair dealing. CUNA removed the action to federal court based upon federal question jurisdiction. CUNA later moved for summary judgment. While Walsvick did not file a cross-motion for summary judgment, his response to CUNA's motion requested that the district court enter judgment in his favor as a matter of law. The district court granted summary judgment for CUNA, concluding that the denial of benefits could not be reversed under the governing arbitrary-and-capricious standard and that ERISA preempted the state law claims. Walsvick appeals, requesting that we remand the case with instructions for the district court to enter judgment in his favor.

## II.

On appeal, Walsvick attacks the district court's denial-of-benefits and preemption rulings. We turn to each issue in that order. Our review of the district court's summary judgment decision is de novo. *See Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## A.

Walsvick first challenges CUNA's denial of LTD benefits under ERISA. *See* 29 U.S.C. § 1132(a)(1)(B). When, as here, the terms of an employee benefit plan clearly

give the plan administrator broad discretion to deny claims, our review of the denial is limited to the arbitrary-and-capricious standard. *See Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 637 (7th Cir. 2005); *Tegtmeier*, 390 F.3d at 1045. Walsvick concedes that this highly deferential standard applies.

We will uphold a denial of benefits under this standard so long as the denial has "rational support in the record." *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004). "[Q]uestions of judgment are left to the administrator of the plan," and, "absent special circumstances such as fraud or bad faith," the administrator's decision cannot be deemed arbitrary and capricious when "it is possible to offer a reasoned explanation, based on the evidence, for that decision." *Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996). "It is not our function to decide whether we would reach the same conclusion as the [administrator] or even rely on the same authority." *Tegtmeier*, 390 F.3d at 1045 (internal quotation omitted). Put simply, the denial will not be overturned unless it is "downright unreasonable." *Id.*

Here, Dr. Goldenberg's opinion provides more than sufficient "rational support in the record" for CUNA's denial. As a cardiologist, Dr. Goldenberg was qualified to render an opinion in this matter. After a review of Walsvick's extensive medical file, Dr. Goldenberg concluded, as fully quoted above, that he saw "no reason why [Walsvick] cannot return to work." Thus, without even delving into the nuances of Dr. Minton's mixed analysis, CUNA's denial can be upheld on the basis of Dr. Goldenberg's opinion alone. The fact that Dr. Goldenberg's view conflicted with other medical opinions, including the opinion of Walsvick's primary physician, does not change the result under the arbitrary-and-capricious standard. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Leipzig*, 362 F.3d at 409.

Realizing the difficulty of overcoming Dr. Goldenberg's opinion directly, Walsvick attempts to circumvent CUNA's reliance on Dr. Goldenberg by focusing his appeal on CUNA's supposed bad faith and other wrongdoing in the handling of his claim. *See Trombetta*, 102 F.3d at 1438. He raises four arguments in this regard.

Walsvick first maintains that the plan administrator failed to review his LTD claim. The plan administrator here is CUNA's Employee Benefit Plan Administration Committee ("Benefit Committee"), and the relevant plan documents require the Benefit Committee to review denials of benefits. Nonetheless, the relevant documents also give the Benefit Committee the power to delegate its duties, and such delegations are permissible under ERISA. *See* 29 U.S.C. § 1105(c)(1). Through this delegation of authority, CUNA's ERISA Committee reviewed Walsvick's claim on multiple occasions, and CUNA's ERISA Appeals Review Committee conducted the final review of his claim. Therefore, the Benefit Committee, through its agents, did review his claim (and did so thoroughly).

Next, Walsvick contends that CUNA used an expert with a conflict of interest.

Before consulting with Drs. Minton and Goldenberg, the ERISA Committee had the aforementioned medical consultant, Hewitt, review Walsvick's claim. Hewitt also happened to be the underwriting manager for CUNA's reinsurer. Without further discussion, Walsvick labels this a conflict of interest and suggests that it tainted the denial of his claim. However, the ERISA Committee and the ERISA Appeals Review Committee made the decisions in this process, and the final decision was supported with evidence beyond Hewitt's analysis. Thus, any bias on the part of Hewitt was indirect and diluted. The three cases cited by Walsvick to support this argument all dealt with the alleged bias of the actual decisionmaker, not a mere consultant. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 980-81 (7th Cir. 1999); *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1343-44 (7th Cir. 1995); *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 527 (6th Cir. 2003). What is more, Walsvick has provided no evidence that Hewitt had a specific stake in the outcome of his claim or was otherwise "any more 'partial' against applicants than are federal judges when deciding income-tax cases." *Perlman*, 195 F.3d at 981. "In the absence of specific evidence of bias, we shall not presume that there is a significant bias." *O'Reilly v. Hartford Life & Accident Ins. Co.*, 272 F.3d 955, 960 (7th Cir. 2001). Walsvick's allegation of bias, therefore, does not undermine the denial of his claim.

Walsvick further asserts that CUNA impermissibly "doctor shopped." Not so. CUNA did nothing wrong in seeking the opinions of Drs. Minton and Goldenberg. It was a routine matter of verification. Getting second opinions, as CUNA did here, is entirely appropriate. As we have observed: "Most of the time, physicians accept at face value what patients tell them about their symptoms; but insurers . . . must consider the possibility that applicants are exaggerating in an effort to win benefits (or are sincere hypochondriacs not at serious medical risk)." *Leipzig*, 362 F.3d at 409. CUNA had a duty, moreover, to all participants in its plan to investigate claims such as Walsvick's, making sure to avoid paying benefits to claimants who are not entitled to receive them. *See Barnhart v. UNUM Life Ins. Co. of Am.*, 179 F.3d 583, 589 (8th Cir. 1999) ("A company failing to conduct proper inquiries into claims for benefits breaches its duty to all claimants as a fiduciary of the benefit funds when it grants claims to unqualified claimants.").

Finally, Walsvick claims that CUNA exhibited bad faith by manipulating Dr. Minton's analysis. According to Dr. Minton's initial report, one indication that stress has a role in a particular illness is when the individual in question loses work time due to stress. Attempting to make such a showing, Walsvick responded with an unsworn statement from his former supervisor, Jim Rosenberger, which said that, during 2000 and 2001, Rosenberger allowed Walsvick to leave work early approximately two days per month. In his second report, Dr. Minton assumed that this early leave was a result of work-related stress. The ERISA Committee disagreed with that assumption and asked Dr. Minton to reevaluate, pointing out that Rosenberger, who no longer worked at CUNA, did not explicitly give a reason—stress or otherwise—for why Walsvick requested and Rosenberger granted the early leave. Also, while records for such early leave were not kept, records were kept for full-day and half-day sick leave, and CUNA

informed Dr. Minton that, even though Walsvick occasionally left work early, his employment records did not reveal any regular or large amounts of sick leave (i.e., full-day or half-day sick leave) prior to his 2001 heart attack. Highlighting such details for Dr. Minton on the important issue of whether stress caused Walsvick to miss work is not the type of nefarious behavior that would constitute bad faith, especially given CUNA's aforementioned investigatory duty to avoid paying benefits to unqualified claimants. *See Barnhart*, 179 F.3d at 589. Furthermore, absent Dr. Minton's analysis, CUNA's ultimate decision can be supported independently by Dr. Goldenberg's opinion. At bottom, Walsvick has not presented a reason that would warrant disturbing CUNA's denial under the arbitrary-and-capricious standard.

**B.**

Separately, Walsvick claims that ERISA should not preempt his state law claims. Our precedent is against him on this point, and Walsvick readily concedes that it is. *See, e.g.*, *Smith v. Blue Cross & Blue Shield United of Wis.*, 959 F.2d 655, 657-58 (7th Cir. 1992). He nevertheless asserts that this precedent is "wrong." However, Walsvick does not say why he thinks it is wrong. His appellate brief only states that he "preserves this issue for appeal." Such a conclusory and underdeveloped argument is insufficient to obtain appellate review. *See Gen. Motors Acceptance Corp. v. Cent. Nat'l Bank of Mattoon*, 773 F.2d 771, 778 n.5 (7th Cir. 1985) ("[The appellant] must make an argument to obtain review, it cannot simply 'reserve' our consideration of these issues."); *see also Armstead v. Frank*, 383 F.3d 630, 633 (7th Cir. 2004); Fed. R. App. P. 28(a)(9)(A). Accordingly, Walsvick has waived the preemption issue. The matter merits no further discussion.

**III.**

CUNA's denial of Walsvick's claim for LTD benefits has rational support in the record. Moreover, there was no bad faith or other wrongdoing by CUNA that would justify overriding its decision. Accordingly, under the arbitrary-and-capricious standard, we will not disturb the denial. The judgment of the district court is AFFIRMED.