**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-2360

BETH A. COSEY,

            Plaintiff - Appellant,

      v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; BIOMERIEUX,
INC.,

            Defendants - Appellees.

Appeal from the United States District Court for the Middle
District of North Carolina, at Greensboro.  Thomas D. Schroeder,
District Judge.  (1:11-cv-00121-TDS-JEP)

Argued:  September 20, 2013        Decided:  November 12, 2013

Before DAVIS, KEENAN, and FLOYD, Circuit Judges.

Vacated and remanded by published opinion.  Judge Keenan wrote
the opinion, in which Judge Davis and Judge Floyd joined.

Norris Arden Adams, II, ESSEX RICHARDS, P.A., Charlotte, North
Carolina, for Appellant.  Patrick C. DiCarlo, ALSTON & BIRD LLP,
Atlanta, Georgia, for Appellees.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we primarily consider whether certain short-term and long-term disability benefits plans provided by an employer unambiguously confer discretionary decision-making authority on the plan administrator, requiring judicial review of the administrator's benefits determinations under an abuse-of-discretion standard.

Upon our review, we conclude that the language at issue in both plans is ambiguous and does not clearly confer discretionary decision-making authority on the plan administrator. Therefore, we hold that the administrator's eligibility determinations denying benefits to a covered employee are subject to de novo judicial review, and that the district court erred in reaching a contrary conclusion. We further hold that the district court erred in concluding that the employer's group insurance plan requires objective proof of disability in order for an employee to qualify for plan benefits. Accordingly, we vacate the district court's judgment and remand the case for further proceedings.

I.

Beth A. Cosey was employed as a senior clinical marketing manager for BioMerieux, Inc., a large medical diagnostics company. BioMerieux has a group insurance contract with the

2

Prudential Insurance Company of America (Prudential), which acts as claims administrator for short-term disability (STD) and long-term disability (LTD) benefits under employee welfare benefits plans (collectively, the benefits plans) issued by Prudential. Cosey was a participant in the STD and LTD benefits plans. Under both plans, a participating employee is entitled to disability benefits if she is "unable to perform the material and substantial duties of [her] regular occupation due to [her] sickness or injury" (emphasis omitted).

Near the end of May 2007, Cosey did not report for work and submitted a claim for disability benefits, citing fatigue, hypotension, weight loss, and sleep apnea.[1] Prudential initially

---

[1] The evidence in the record before us contains a number of medical terms, several of which are defined, in relevant part, as follows:

(1) "Disequilibrium" is "[a] disturbance or absence of equilibrium," Stedman's Medical Dictionary 566 (28th ed. 2006);
(2) "Dysautonomia" is "[a]bnormal functioning of the autonomic nervous system," id. at 595;
(3) "Fibromyalgia" is "[a] common syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances," id. at 725;
(4) "Hypersomnia" is "[a] condition in which sleep periods are excessively long, but the person responds normally in the intervals," id. at 926;
(5) "Hypotension" is "[s]ubnormal arterial blood pressure," id. at 937;
(6) "Myoclonus" is "[o]ne or a series of shocklike contractions of a group of muscles, of variable regularity, synchrony, and symmetry, generally due to a central nervous system lesion," id. at 1272;
(Continued)

3

approved Cosey's claim and allowed benefits covering about a three-week period, after which Prudential determined that Cosey had presented insufficient evidence of an impairment preventing her from performing the material and substantial duties of her regular occupation. BioMerieux eventually terminated Cosey's employment in June 2008, and Cosey filed a civil action in federal court to recover STD and LTD benefits.

BioMerieux re-hired Cosey in August 2008, allowing her to work from home and assigning her to a limited travel schedule. Several months later, BioMerieux and Cosey reached a settlement agreement in Cosey's lawsuit.

In March 2009, after Cosey had been working at BioMerieux in a limited capacity for about seven months, Cosey took unscheduled leave and filed another claim for disability benefits. In support of her claim, Cosey complained of fatigue, sleep disorder, fibromyalgia, dysautonomia, myoclonus, and dizziness. Prudential initially approved Cosey's claim and paid her STD benefits for about seven weeks.

---

(7) "Sleep apnea" is a disorder "associated with frequent awakening" during sleep and "often with daytime sleepiness," id. at 119;

(8) "Tremor[s]" are "[r]epetitive, often regular, oscillatory movements caused by alternate, or synchronous, but irregular contraction of opposing muscle groups; usually involuntary," id. at 2023.

4

Cosey's consultations with various physicians produced varying medical opinions with regard to her condition. For instance, Cosey initially was evaluated for "overwhelming fatigue" by a primary care physician in May 2007, but that physician noted that Cosey had "[n]o diagnosis/treatment established." Later that month, a different doctor diagnosed Cosey with hypersomnia despite her "normal sleep at night," an essential tremor that was "currently asymptomatic," and chronic disequilibrium despite there being "no evidence of cerebellar dysfunction."

Further consultations yielded similarly inconclusive impressions. A neurologist diagnosed Cosey with sleep apnea, but stated that the disorder was "not severe enough to explain the degree of day time sleepiness." An endocrinologist remarked that Cosey had lost more than thirty pounds in six months, but also noted that Cosey had "improved 60% over the last few months" of that period and was "spontaneously getting better."

Although Cosey reported experiencing dizziness, fatigue, and tremors, one neurologist stated that an examination of Cosey was "relatively unremarkable" after a "near complete workup," and a neuropsychologist stated that "there are not suggestions of neurocognitive impairment." A cardiologist reported that Cosey had experienced a temporary drop in blood pressure, but opined that she otherwise was in normal cardiovascular

5

condition. Cosey initially told the cardiologist that she was experiencing "overwhelming fatigue," but later told the same doctor that she was "able to play golf on the weekends," and was "no longer having the dizziness or lightheaded episodes."

On the basis of this mixed record, the various physicians reached different conclusions about Cosey's ability to return to work. In support of Cosey's claim for disability benefits, Cosey's primary care physician opined that "[t]here is no occupation that [Cosey] can sustain at this time and I deem her condition permanent." Also, Cosey's chiropractor thought that Cosey suffered from a "structural deficit in her cervical spine" and doubted whether Cosey "could handle the everyday needs of work."

In contrast, four medical reviewers hired by Prudential studied Cosey's patient records and concluded that Cosey's test results did not support a finding of impairment, that there was no medical explanation for Cosey's self-reported symptoms, and that Cosey's condition did not preclude her from engaging in full-time work. Additionally, Prudential hired a company to conduct surveillance of Cosey, which revealed that Cosey had opened a coupon-related business in Myrtle Beach, South Carolina, less than one month after she most recently had stopped working for BioMerieux. Also, Cosey was observed

outside her house "standing, walking, bending, entering and exiting a vehicle and driving."

On May 15, 2009, Prudential notified Cosey that it would not authorize further payments unless Cosey submitted additional medical information supporting her continued disability. Cosey did not timely submit additional evidence in response to that request. Prudential informed Cosey that it had determined that the evidence of her claimed impairment was insufficient, and that, therefore, she was not entitled to further STD benefits.

Cosey filed an administrative appeal of Prudential's termination of her STD benefits, but the plan administrator upheld the earlier decision and also declared Cosey ineligible for LTD benefits. Cosey retained counsel and filed a second administrative appeal, requesting reconsideration of both decisions. The plan administrator again upheld its earlier determinations, stating its finding that Cosey's "self-reported symptoms are out of proportion to the medical evidence."

After exhausting her administrative remedies, Cosey filed the present civil action against Prudential and BioMerieux. The district court applied an abuse-of-discretion standard of review to Prudential's denial of LTD and STD benefits. The court held that the plan administrator's decisions did not constitute an abuse of discretion, and that Cosey had failed to create a genuine issue of material fact for the court's determination.

7

The court alternatively held that even applying a de novo review standard, the court "would still find that Cosey failed to meet the definition of disability" under the benefits plans. The district court entered summary judgment in favor of Prudential and BioMerieux, and Cosey timely filed the present appeal.

II.

Before considering the district court's award of summary judgment, we first must determine whether the district court employed the appropriate standard of review in examining the plan administrator's denial of LTD and STD disability benefits. We consider the LTD and STD benefits plans in turn.

A.

The LTD benefits plan before us is subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 through 1461. In the ERISA context, courts conduct de novo review of an administrator's denial of benefits unless the plan grants the administrator discretion to determine a claimant's eligibility for benefits, in which case the administrator's decision is reviewed for abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989); see also Williams v. Metro. Life Ins. Co., 609 F.3d 622, 629-30 (4th Cir. 2010).

8

This Court explained in Gallagher v. Reliance Standard Life Insurance Co. that no specific words or phrases are required to confer discretion, but that a grant of discretionary authority must be clear. 305 F.3d 264, 268 (4th Cir. 2002); see also Sandy v. Reliance Standard Life Ins. Co., 222 F.3d 1202, 1207 (9th Cir. 2000) ("Neither the parties nor the courts should have to divine whether discretion is conferred."). We further have stated that any ambiguity in an ERISA plan "is construed against the drafter of the plan, and it is construed in accordance with the reasonable expectations of the insured." Gallagher, 305 F.3d at 269 (citation and internal quotation marks omitted).

The LTD plan administered by Prudential states that benefits only will be paid to a claimant who "submit[s] proof of continuing disability satisfactory to Prudential" (emphasis added). Prudential and BioMerieux (collectively, Prudential) argue that under our decision in Gallagher, we are required to determine that this language in the LTD plan unambiguously confers discretion on the plan administrator. We disagree.

In Gallagher, we observed that plan language requiring a claimant to "submit[] satisfactory proof of [t]otal [d]isability to us" was ambiguous, and could be interpreted as requiring either an objective or a subjective standard for determining whether a claimant's "proof" was "satisfactory." Id. (emphasis added). Therefore, we held that the plan language did not

9

clearly convey that the plan administrator had discretionary decision-making authority in deciding benefits claims.  Id. at 269-70.

In explaining our decision in Gallagher, we provided an example of a subjective standard different from the language at issue in that case.  We noted hypothetically that a requirement that a claimant submit "proof . . . that is satisfactory to [the plan administrator]" would refer to proof that the administrator "finds subjectively satisfactory," and would occasion abuse-of-discretion review.  Id. at 269.  However, because the language provided in the above hypothetical example was not before us for decision in Gallagher, we hold that our discussion of that language was dictum and does not bind our consideration of the plan language before us.  Accordingly, we consider as a matter of first impression whether the phrase "proof satisfactory to [the plan administrator]" unambiguously confers discretionary decision-making authority on a plan administrator.

We observe that five of our sister circuits recently have held that this language does not unambiguously confer such discretionary authority.  In fact, earlier this year the First Circuit followed the Seventh Circuit's example in departing from its own precedent to join a growing consensus of circuit courts that require stricter clarity in plan language before insulating insurance companies from full judicial review.  See Gross v. Sun

Life Assurance Co. of Can., --- F.3d ---, 2013 WL 4305006, at *8-12 (1st Cir. Aug. 16, 2013); Diaz v. Prudential Ins. Co. of Am., 424 F.3d 635, 639-40 (7th Cir. 2005); see also Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 417 (3d Cir. 2011); Feibusch v. Integrated Device Tech., Inc. Emp. Benefit Plan, 463 F.3d 880, 883-84 (9th Cir. 2006); Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 252 (2d Cir. 1999).

We agree with the conclusions reached by our five sister circuits. Three major themes pervade the opinions of those courts and are relevant to our analysis. We consider: (1) the inherent ambiguity in the wording of the phrase "proof satisfactory to us"; (2) the likelihood that such language will fail to provide sufficient notice to employees that their disability claims will be subject to a plan administrator's discretionary determination; and (3) the responsibility of insurance companies to draft clear plan language.

First, we conclude that the phrase "proof satisfactory to us" is inherently ambiguous. As the Second Circuit has explained, such language could be construed as simply stating the truism that the administrator is the decision-maker who initially must be persuaded that benefits should be paid before any amounts actually are paid. See Kinstler, 181 F.3d at 252. Or, as the First, Third, and Seventh Circuits have observed, the phrase could be interpreted as describing the "inevitable

11

prerogative" of a plan administrator to insist that the form of proof complies with prescribed standards, on the theory that an administrator ought to be able to require production of particular types of proof that the administrator deems most reliable.  Diaz, 424 F.3d at 637, 639 ("[E]very plan requires submission of documentary proof, and the administrator is entitled to insist on [one form of proof over another]." (citations omitted)); see also Viera, 642 F.3d at 417 ("In other words, it is not clear whether 'satisfactory to Us' means '. . . proof of loss [in a form] satisfactory to Us' or '. . . proof of loss [substantively and subjectively] satisfactory to Us.'") (brackets in original); Gross, 2013 WL 4305006, at *11 (explaining that "satisfactory to us" wording "reasonably may be understood to state [an administrator's] right to insist on certain forms of proof rather than confer[] discretionary authority over benefits claims").  Similarly, the phrase could mean that the plan administrator is entitled to require that the quantum of proof meets some objective standard that the administrator ultimately has no power to change.  Cf. Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089 (9th Cir. 1999).

Another possible reading, of course, is that the evidence must "comply with the plan administrator's subjective notions of eligibility, disability, or other terms in the plan."  Diaz, 424

12

F.3d at 639. From this perspective, the administrator would be vested not only with the power to insist on proof in a certain form or quantum, but also with the discretion "to interpret the rules, to implement the rules, and even to change them entirely." Id.

In view of the ambiguity of this plan language, a decision here in favor of Prudential would violate our requirement of clear plan language that "expressly creates discretionary authority." Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 522 (4th Cir. 2000); cf. Gross, 2013 WL 4305006, at *11 (requiring an administrator to "offer more than subtle inferences drawn from such unrevealing language" to support the administrator's claim of discretionary authority). Thus, we cannot accord Prudential such an expansive inference regarding its plan administrator's decision-making authority.

The second reason for our conclusion that the phrase "proof satisfactory to us" does not confer discretion on an administrator involves the notice function of plan language. We identified this notice function as an important consideration in Gallagher, in which we held in part that a plan did not clearly confer discretion because such a construction of the plan's language would not be an insured employee's "most likely" interpretation of that language. 305 F.3d at 270.

13

We are concerned that insured employees who read Prudential's ambiguous plan language are not given sufficient notice whether their plan administrator has "broad, unchanneled discretion to deny claims." Diaz, 424 F.3d at 637 (citation and internal quotation marks omitted). It is critical that employees understand the broad range of a plan administrator's authority because of the impact that this information can have on employees' own decisions. For instance, as the Seventh Circuit has noted, employees may choose a particular employer based on their understanding of the insurance benefits provided by that employer, including whether any award of benefits is subject to a plan administrator's discretionary decision-making authority. See id. at 639 ("[S]ome may prefer the certainty of plans that do not confer discretion on administrators, while others may think that the lower costs that are likely to attend plans with reserved discretion are worth it.").

Additionally, without clear language notifying employees that an administrator's denial of benefits is insulated from plenary judicial review, employees who file claims for benefits may not be fully aware of the gravity of administrative proceedings or the necessity of developing as complete a record as possible early in the claims process. Even a claimant's decision whether to be represented by counsel in administrative proceedings can be affected if the claimant is aware that once

14

administrative avenues of appeal are exhausted, federal courts will review the administrator's determinations under a highly deferential legal standard.[2]

The third basis for our conclusion that the phrase "proof satisfactory to us" is insufficient to confer discretion on a plan administrator is the well-settled principle that ambiguities in an ERISA plan must be construed against the administrator responsible for drafting the plan. See Gallagher, 305 F.3d at 269. As the First Circuit recently observed, "it is not difficult to craft clear language" granting discretion to a plan administrator. Gross, 2013 WL 4305006, at *12; see also Feibusch, 463 F.3d at 883-84 (same); Kinstler, 181 F.3d at 252 (counseling courts to "decline to search in semantic swamps for arguable grants of discretion" given the ease in drafting clear language).

We acknowledge that no magic words are required to ensure discretionary, rather than de novo, judicial review of a plan administrator's decision. Gallagher, 305 F.3d at 268. However, we also agree with the First Circuit's observation that drafters of ERISA plans have had every opportunity to avoid adverse

---

[2] We note that Cosey appears to have corresponded with Prudential on her own during the processing of her STD claim and her initial administrative appeal of Prudential's termination of STD benefits. She hired counsel to assist her in further administrative proceedings and in civil litigation.

15

rulings on this issue, especially in light of the gradual but unmistakable change in the precedential landscape of federal appellate decisions. See Gross, 2013 WL 4305006, at *12. Indeed, the group insurance contract in the record is dated May 1, 2007, well after the Second, Seventh, and Ninth Circuits already had rejected as inadequate the "proof satisfactory to us" formulation that we consider here.

For these reasons, we now join the circuits that decline to impose an abuse-of-discretion standard of review based solely on a plan's requirement that claimants submit "proof . . . satisfactory to [the plan administrator]."[3] This conclusion complements our holding in Gallagher, by requiring clear plan language expressly conferring decision-making discretion on a plan administrator before permitting judicial review of that administrator's decision under an abuse-of-discretion standard. Accordingly, we hold that the district court erred in reviewing the plan administrator's denial of

---

[3] We therefore disagree with the minority of circuits that have concluded that language similar to the language before us confers discretionary decision-making authority on a plan administrator. See Tippitt v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1233-34 (11th Cir. 2006); Nance v. Sun Life Assurance Co. of Can., 294 F.3d 1263, 1267-68 (10th Cir. 2002); Ferrari v. Teachers Ins. & Annuity Ass'n, 278 F.3d 801, 806 (8th Cir. 2002).

16

Cosey's claim for LTD benefits under an abuse-of-discretion standard.[4]

B.

We next address the plan detailing Cosey's STD benefits. The parties have stipulated, and we agree, that the STD plan is not governed by ERISA.[5] Therefore, we must ascertain the appropriate standard for judicial review of a plan administrator's benefits determination under the present STD plan.[6] We hold that the STD plan did not confer discretionary

---

[4] We are not persuaded to the contrary by Prudential's citation to the summary plan description for the LTD plan, which provides, in relevant part, that the administrator has "sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." We think this argument is foreclosed by the Supreme Court's decision in CIGNA Corporation v. Amara, 131 S. Ct. 1866, 1878 (2011), in which the Court concluded that "the summary documents, important as they are, provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan" (emphasis in original). Moreover, because we have determined that the language of the LTD plan is ambiguous and have construed that ambiguity against Prudential, we find no basis for crediting a conflicting grant of authority contained in a non-plan document.

[5] As the district court noted, the basis for the parties' stipulation is an exemption from ERISA for agreements whereby an employer pays an employee's normal compensation out of the employer's general assets during a period in which the employee is physically or mentally unable to perform her duties. See 29 C.F.R. § 2510.3-1(b)(2).

[6] Some circuits have reached different conclusions on the separate issue whether abuse-of-discretion review may be applied with respect to certain ERISA-exempt plans. Compare Comrie v. IPSCO, Inc., 636 F.3d 839, 842 (7th Cir. 2011) (applying
(Continued)

17

decision-making authority on the plan administrator, and that, therefore, the district court erred in reviewing the plan administrator's denial of Cosey's STD benefits claim under an abuse-of-discretion standard.

We begin our analysis by consulting familiar principles of North Carolina contract law, which we apply to the benefits plan before us.[7]  In North Carolina, when a court interprets a contract, the court's primary function is to ascertain the parties' intention as expressed in their written instrument. See Lane v. Scarborough, 200 S.E.2d 622, 624 (N.C. 1973).  If

---

deferential review and noting that it should be "easier, not harder" to effectuate a grant of discretion in a standard contract than in a highly regulated ERISA plan), with Goldstein v. Johnson & Johnson, 251 F.3d 433, 442-44 (3d Cir. 2001) (applying de novo review to an ERISA-exempt, "top hat" deferred compensation plan even when the plan conferred discretionary authority on a plan administrator not acting as an ERISA fiduciary), and Craig v. Pillsbury Non-Qualified Pension Plan, 458 F.3d 748, 752 (8th Cir. 2006) (adopting an intermediate standard).  However, we need not reach this issue in the present case because we conclude that the contractual terms of the STD plan did not confer discretion on the plan administrator.

[7] Although the group insurance contract states that "[t]he Group Contract is delivered in and is governed by the laws of the Governing Jurisdiction," which is defined as the "State of Missouri," the parties in this case asked the district court to interpret the STD plan under North Carolina law.  On appeal, both parties likewise have argued the case based on the trial court's application of North Carolina law.  Accordingly, we apply North Carolina law in our analysis. Cf. Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.").

18

the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract considered as a whole. See State v. Philip Morris USA Inc., 685 S.E.2d 85, 90 (N.C. 2009) (citations omitted).

Only when terms of a contract are ambiguous are courts authorized to apply rules of construction. See Jones v. Casstevens, 23 S.E.2d 303, 305 (N.C. 1942). Any such ambiguities in contract language must be construed against the party responsible for drafting the uncertain language. See Novacare Orthotics & Prosthetics E., Inc. v. Speelman, 528 S.E.2d 918, 921 (N.C. Ct. App. 2000). And, in the context of insurance contracts, North Carolina courts long have held that ambiguities must be construed in favor of the insured. See, e.g., Kirkley v. Merrimack Mut. Fire Ins. Co., 59 S.E.2d 629, 631 (N.C. 1950); McCain v. Hartford Live Stock Ins. Co., 130 S.E. 186, 187 (N.C. 1925).

Prudential argues that the STD plan requirement that claimants "submit satisfactory proof of continuing disability" is a grant of discretionary decision-making authority. In response, Cosey submits that this phrase in the STD plan is indistinguishable from the very similar language that we held ambiguous in Gallagher. See 305 F.3d at 269.

We agree with Cosey that the "satisfactory proof" language in the STD plan is the functional equivalent of the language we

19

held ambiguous in Gallagher. As we discussed in Gallagher, a requirement that a claimant submit "satisfactory proof" could be interpreted as mandating proof that is "objectively satisfactory," or proof that is "subjectively satisfactory" to the plan administrator. Id. Because we are unable to determine the parties' intention from the language of the contract, ordinary principles of contract construction compel us to construe this ambiguous phrase in favor of Cosey, the insured employee, and conclude that the STD plan fails to confer discretionary decision-making authority on the plan administrator.

Our conclusion is not altered by Prudential's contention that any ambiguity in the STD plan should be resolved against Cosey because of the clear grant of discretion to the plan administrator in a separate Administrative Services Agreement (ASA), which Prudential asserts we must view as an integral part of the STD plan.[8] The unsigned ASA in the record purports to have been negotiated between BioMerieux and Prudential more than eight months after the commencement of Cosey's coverage under

_____

[8] Because we apply state law to decide whether the ASA is a part of the ERISA-exempt STD plan at issue in this case, we do not reach the question whether an ASA can confer discretion absent a discretionary grant in an ERISA plan. Therefore, the ERISA cases cited by the parties are inapposite. We note, however, that in the ERISA context, the Supreme Court's decision in Amara has cast serious doubt on whether non-plan documents can be used to interpret a plan's language. See supra note 4.

the STD and LTD plans.  Among other things, the ASA states that "Prudential will have discretionary authority to determine eligibility for benefits" and "to interpret and construe the terms of the Plan."

Prudential's reliance on the ASA is misplaced.  The STD plan does not incorporate or even refer to the ASA.  Cf. Booker v. Everhart, 240 S.E.2d 360, 363 (N.C. 1978) ("To incorporate a separate document by reference is to declare that the former document shall be taken as part of the document in which the declaration is made, as much as if it were set out at length therein.").  Absent any terms in the contract elaborating the parties' intention to confer discretion on the plan administrator, we decline to hold that the ASA's grant of discretion constitutes a part of the STD plan, particularly when doing so would conflict with our duty under North Carolina law to construe ambiguous contract terms against the drafter and in favor of the insured.[9]  Therefore, we conclude that the STD plan does not confer decision-making discretion on the plan administrator, and that the district court erred in applying abuse-of-discretion review to the plan administrator's denial of Cosey's STD benefits claim.

---

[9] In view of our holding that the language of the STD plan is ambiguous and must be construed in Cosey's favor, we need not discuss the fact that the version of the ASA in the record is unsigned.

21

Generally, we review a district court's award of summary judgment de novo, applying the same standards as those governing the district court's review of the record. Cf. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127-28 (4th Cir. 1987). As we have discussed above, the district court was required to review de novo the decisions of the plan administrator with respect to Cosey's LTD and STD claims. After the district court reviewed the plan administrator's decision for abuse of discretion, the court alternatively opined that "even under a de novo review, the court would still find that Cosey failed to meet the definition of disability in the STD and LTD benefits plans."

Cosey argues that the district court's use of an incorrect standard of review, and the court's erroneous view that both benefits plans required Cosey to present objective evidence of her disability, mandates reversal of the summary judgment award. In response, Prudential asserts that the court's de novo review of the plan administrator's decision permits us to conduct our own de novo review of that alternative holding, and that the district court did not err in holding that Cosey was required to present objective evidence that she was disabled.

We disagree with Prudential's argument. Although the district court's alternative holding referenced the correct standard of review, we presently are unable to consider that

22

holding because it was based in part on the court's ruling that Cosey was required to present objective evidence of her disability. The district court articulated its requirement of objective proof, stating:

> Both the STD and LTD benefits plans state that the claimant is required to submit "proof" of disability to receive benefits. The use of the word "proof" communicates that there must be some objective basis to the claimant's complaints, or plan administrators would have to accept all subjective claims of the participant without question. It is hardly unreasonable for the administrator to require an objective component to proof of disability (citations, internal quotation marks, and brackets omitted).

We express no opinion whether a company lawfully could draft a benefits plan requiring that a claimant produce objective proof of disability. However, no such requirement appears in either the LTD or the STD plans before us. Neither plan provides that a claimant's submission of proof must contain an "objective component." See DuPerry v. Life Ins. Co. of N. Am., 632 F.3d 860, 869 (4th Cir. 2011) (holding that under a plan "contain[ing] no provision precluding [a claimant] from relying on her subjective complaints as part of her evidence of disability," a claim cannot be denied based on such reliance). Therefore, we hold that the district court erred in concluding that Prudential could deny Cosey's STD and LTD claims on the basis that her proof lacked such objective evidence. Further,

23

because this improper consideration was part of the district court's ultimate award of summary judgment in Prudential's favor, we must vacate the award and remand for the court to review Cosey's evidence de novo under the actual requirements of the LTD and STD plans.

IV.

In summary, we conclude that the language of both the STD and the LTD plans is inherently ambiguous and fails to confer discretionary decision-making authority on Prudential, requiring de novo judicial review of the administrator's denial of Cosey's benefits claims under those plans. We therefore hold that the district court erred in reviewing Prudential's decisions for an abuse of discretion. We further hold that the district court erred in requiring objective evidence of Cosey's claimed disability when neither the LTD nor the STD benefits plans contain such a requirement. Accordingly, we vacate the district court's award of summary judgment and remand with instructions that the court apply de novo review to the plan administrator's denial of Cosey's LTD and STD benefits claims.

<u>VACATED AND REMANDED</u>

24