**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 13-1859**

———————————

RICHARD BILHEIMER,

              Plaintiff – Appellee,

        v.

FEDERAL EXPRESS CORPORATION LONG TERM DISABILITY PLAN,

              Defendant – Appellant.

-----------------------------

GEORGE W. HICKS, JR.,

              Amicus Curiae.

———————————

Appeal from the United States District Court for the District of
South Carolina, at Greenville.  G. Ross Anderson, Jr., Senior
District Judge.  (6:12-cv-00383-GRA)

———————————

Argued:  March 26, 2015                     Decided:  May 5, 2015

———————————

Before DIAZ, FLOYD, and THACKER, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:** David P. Knox, FEDERAL EXPRESS CORPORATION, Memphis,
Tennessee, for Appellant.  George W. Hicks, Jr., BANCROFT, PLLC,
Washington, D.C., as Court-Assigned Amicus Counsel.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Federal Express Corporation Long Term Disability Plan[1] appeals the district court's award of summary judgment in favor of Richard Bilheimer ("Appellee"). Following multiple accidents, Appellee applied for and received disability benefits. However, Appellant eventually denied further long-term benefits -- a decision Appellee sought to have reviewed by the courts. Reviewing the denial of benefits de novo, the district court held that the weight of the evidence indicated Appellee was totally disabled and thus entitled to receive disability benefits.

We affirm the district court's decision to review the denial of benefits de novo because Appellee's claim was not reviewed and denied by an entity with discretionary authority over appeals. We further affirm the district court's conclusion that Appellee is entitled to receive disability benefits because the district court did not err by determining Appellee fell within the Plan's definition of "totally disabled."

---

[1] Federal Express Corporation Long Term Disability Plan is both a party and the proper name of the benefits plan at issue. For clarity, we refer to it as "Appellant" when we discuss its status as a party; we refer to it as the "Plan" when we discuss its status as a benefits plan.

I.

A.

Federal Express Corporation ("FedEx") established the Plan to ensure the funding and availability of long-term disability benefits for its employees. Pursuant to the Plan, FedEx established the Retirement Plan Investment Board ("Board") "to perform the administrative duties hereunder other than administration of claims." J.A. 460.[2] The Plan also outlines the benefits review process, providing for initial and appellate review of an individual's claim.

Aetna Life Insurance Company ("Aetna") serves as the claims-paying administrator for the Plan. As claims-paying administrator, Aetna initially determines whether an individual is entitled to receive benefits under the Plan. If an individual is denied benefits at this stage, he or she may appeal the initial denial.

Appeals of benefits denials are handled by an appeal committee. FedEx, the administrator of the Plan, is charged with appointing this appeal committee. Originally, FedEx appointed its internal Benefit Review Committee to serve as the appeal committee. In July 2008, however, the director of

_____
[2] Citations to the "J.A." refer to the contents of the Joint Appendix filed by the parties in this appeal.

FedEx's Employee Benefits Department recommended that the Board "outsource all [long-term disability] appeals to Aetna." J.A. 58-59. The Board approved this recommendation, thus ceasing operation of the Benefit Review Committee. But the Board's minutes from the meeting do not expressly state that the Board was appointing Aetna as the appeal committee contemplated under the Plan.[3]

To institute this change, FedEx and Aetna amended their service agreement. Under the amended agreement, Aetna became "fully responsible for final appeal benefit determinations for the Short Term Disability Plans, and . . . for Long Term Disability Plans." J.A. 65.

## B.

Appellee was employed by FedEx from 1997 to 2005 and, during this time, was a full-time senior safety specialist. As a FedEx employee, Appellee participated in the Plan. While employed by FedEx, Appellee sustained various injuries in two separate automobile accidents -- one in 2001 and another in 2005.

---

[3] Rather, the minutes state that the Board "approve[d] the recommendation" to "outsource remaining long-term disability appeals effective September 1, 2008, and effectively cease the operation of the Benefit Review Committee." J.A. 63.

4

The second accident caused substantial and lasting injuries. Appellee was left unable to work, prompting the end of his employment with FedEx. In the years that followed, Appellee sought treatment from and was examined by numerous doctors. These doctors diagnosed Bilheimer with -- and treated him for -- various medical conditions, including:

> chronic pain syndrome, degenerative disc disease, carpal tunnel syndrome, high blood pressure, obstructive sleep apnea, temporomandibular joint disorder[,] . . . cervical radiculitis, and obesity. In 2008, a magnetic resonance imaging . . . showed that [Appellee] had multiple herniated discs. Also in 2008, [Appellee] underwent a nerve conduction and electromyography . . . study which revealed that he suffered from chronic cervical radiculitis and that he had borderline carpal tunnel syndrome.

J.A. 2.

Appellee received short-term benefits from December 9, 2005, to June 8, 2006. After his short-term benefits ended, he applied for long-term benefits under the Plan. He received temporary long-term benefits under the Plan from June 9, 2006, to June 8, 2008.

C.

Although Appellee received twenty-four months of long-term benefits, Aetna -- in its capacity as claims administrator for the Plan -- denied further benefits because Appellee's "medical condition [did] not meet the definition of Total

5

Disability" under the Plan. J.A. 81. Specifically, Aetna concluded that Appellee failed to prove that his disability prevented him from engaging "in any compensable employment for twenty-five hours per week." J.A. 414. In support of his benefits claim, Appellee offered the medical opinions of Dr. Peter Morris and Dr. Glendon Rougeou. Dr. Morris, who conducted a comprehensive examination of Appellee as part of a Social Security Disability Insurance evaluation, determined "that in an eight-hour workday, [Appellee] could be expected to stand and/or walk for two hours at most, and to sit for four hours maximum, with a break every hour." J.A. 19. And Dr. Rougeou, who also conducted a physical examination and provided continuous care to Appellee, concluded Appellee was totally disabled:

> It is my opinion, based upon my medical education and experience and based upon my specific knowledge of [Appellee's] problems and treatment history that he is and has been completely and totally disabled from performing any employment on a part-time (twenty-five hours per week) or full-time basis, consistent with the definition of disability above. I render my opinion based upon the cumulative effect of [Appellee's] above described objectively diagnosed medical problems and the subjective symptoms he suffers.

Id. at 91.

Despite the opinions of Dr. Morris and Dr. Rougeou, Aetna's peer review physicians determined Appellee was not totally disabled, per the Plan's requirements. See, e.g., J.A.

6

309 ("[T]here is no significant objective clinical documentation that reveals a functional impairment that would preclude the claimant from engaging in any compensable employment for a minimum of 25 hours a week from 6/9/08 to current.").

Appellee then sought review of this determination through the process established in the Plan. Acting in its appellate capacity per the amended service agreement, an "Aetna Appeal Review Committee" again accepted the findings of the Aetna doctors and upheld the initial denial of continued long-term benefits.

D.

Appellee then filed a complaint in the district court challenging the denial of benefits pursuant to the Employee Retirement Income Security Act ("ERISA"). At the case's outset, Appellee and Appellant each filed a motion for partial summary judgment regarding the appropriate standard of review. Appellee claimed the district court should review the denial de novo because FedEx was not permitted to delegate to Aetna discretionary appellate review of benefits claims. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (explaining that, when an ERISA claimant is denied benefits, the denial of benefits is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of

7

the plan"). Appellant claimed that FedEx modified the Plan to provide Aetna with this authority or, in the alternative, that FedEx appointed Aetna as the appeal committee. Therefore, Appellant argued, the abuse-of-discretion standard of review was appropriate.

First, the district court concluded FedEx was not authorized to delegate its discretionary authority:

> [I]n this case, the Service Agreement evidences an explicit delegation of authority to Aetna; however, the [Plan] does not authorize such a delegation. . . . [T]he [Plan] was not properly modified to allow for delegation; thus, delegation remains improper, even though the Service Agreement explicitly stated that a delegation had been made.

J.A. 35; <u>Belheimer [sic] v. Fed. Express Corp. Long Term Disability Plan</u>, No. 6:12-00383, 2012 WL 5945042 (D.S.C. Nov. 28, 2012). Second, the district court concluded FedEx merely outsourced the appeals process to Aetna and did not appoint a new appeal committee. Accordingly, the district court reviewed the denial of benefits de novo.

In a subsequent order addressing the denial of benefits, the district court thoroughly reviewed the opinions offered by the myriad doctors and peer review physicians. First, the district court found the opinions and limitations discussed by Dr. Morris and Dr. Rougeou "more persuasive than those of the doctors that prepared physician review reports" per

8

Aetna's request. J.A. 19. Second, the district court determined that "total disability" -- and the requirement that Appellee be able to engage in "compensable employment" -- could not be narrowly construed, adopting the Sixth Circuit's interpretation of similar language:

> [T]he Court finds that the phrase "any compensable employment" should not "be construed so narrowly that an individual must be utterly helpless to be considered disabled . . . . [N]ominal employment, such as selling peanuts or pencils which would yield only a pittance, does not constitute[]" compensable employment.

Id. at 22–23 (quoting VanderKlok v. Provident Life & Accident Ins. Co. Inc., 956 F.2d 610, 615 (6th Cir. 1992)) (first and second alterations in original). So the district court concluded the limitations expressed by Dr. Morris precluded Appellee from engaging in "compensable employment."

Based on these findings and conclusions, the district court held "that the weight of the evidence indicates that [Appellee] has the complete inability to engage in any compensable employment for twenty-five hours per week and is thus totally disabled." J.A. 23. The district court ordered Appellant to award benefits to Appellee. Appellant filed a timely appeal.

9

II.

Appellant attacks the judgment of the district court on two fronts.

First, Appellant contends the district court erred when it reviewed the denial of benefits de novo because Aetna had discretionary authority to decide benefits appeals. We review this issue de novo. See Haley v. Paul Revere Life Ins. Co., 77 F.3d 84, 89 (4th Cir. 1996) (determining de novo review is appropriate standard of review when deciding "whether the [ERISA] plan confers discretion upon the administrator to make the decision at issue").

Second, Appellant claims the district court erred when it determined Appellee was totally disabled, as defined by the Plan. Because we find the district court correctly reviewed Appellee's benefits eligibility de novo, we employ the same standard. See Williams v. Metro. Life Ins. Co., 609 F.3d 622, 629 (4th Cir. 2010). We "review factual findings for clear error, and legal conclusions de novo." Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 442 (2d Cir. 2006) (emphasis omitted).

III.

A.

Before we examine the district court's "total disability" determination, we must pass judgment on the district

10

court's resort to de novo review. When an ERISA claimant is denied benefits, the denial of benefits is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "If such discretionary authority is conferred, the courts' review is for abuse of discretion; however, the default standard of review is de novo, and abuse-of-discretion review is appropriate only when discretion is vested in the plan administrator." Johnson v. Am. United Life Ins. Co., 716 F.3d 813, 819 (4th Cir. 2013) (internal quotation marks omitted).

An ERISA plan can confer discretion (1) by language that "expressly creates discretionary authority" or (2) by terms that "create discretion by implication." Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 522-23 (4th Cir. 2000). Regardless of whether discretion is created expressly or implicitly, a plan must manifest a clear intent to confer such discretion. Woods v. Prudential Ins. Co. of Am., 528 F.3d 320, 322 (4th Cir. 2008); see also Cosey v. Prudential Ins. Co. of Am., 735 F.3d 161, 165 (4th Cir. 2013).

On appeal, the parties agree that the Plan confers discretion upon two entities: FedEx and the "appeal committee" appointed by FedEx. They dispute, however, whether the Plan

11

also grants Aetna that authority. Appellant argues Aetna had discretionary authority because either FedEx appointed Aetna as the appeal committee pursuant to the Plan or FedEx modified the Plan. We reject both arguments, finding Aetna did not have discretionary authority to determine whether Appellee was entitled to benefits.

1.

The Plan provides that FedEx shall appoint an appeal committee and vests this committee with discretionary authority. In particular, section 5.3(c) of the Plan provides that FedEx "shall appoint an appeal committee for the purpose of conducting reviews of denial of benefits and providing the claimant with written notice of the decision reached by such committee." J.A. 450. The authority of the appeal committee is established by section 5.3(d) of the Plan:

> The appeal committee . . . shall, subject to the requirements of the Code and ERISA, be empowered to interpret the Plan's provisions in its sole and exclusive discretion in accordance with its terms with respect to all matters properly brought before it . . . including, but not limited to, matters relating to the eligibility of a claimant for benefits under the Plan. The determination of the appeal committee shall be made in a fair and consistent manner in accordance with the Plan's terms and its decision shall be final, subject only to a determination by a court of competent jurisdiction that the committee's decision was arbitrary and capricious.

12

_Id._ at 453–54. Appellant claims Aetna was appointed as the appeal committee because the Board disbanded the Benefit Review Committee, the Board decided to outsource appeals to Aetna, and FedEx and Aetna amended their service agreement. Accordingly, Appellant argues, Aetna had discretionary authority to grant or deny benefits.

2.

This claim turns on the meaning of "appoint," raising a question of interpretation. We interpret ERISA plans just as we interpret contracts and trusts. _See_ _Johnson v. Am. United Life Ins. Co._, 716 F.3d 813, 819 (4th Cir. 2013). We enforce the terms of an ERISA plan "according to the literal and natural meaning of the [p]lan's language." _Id._ at 820 (internal quotation marks omitted). We look at the plan "as a whole and determine the provision's meaning in the context of the entire agreement." _Id._ But when "the language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties," the terms remain ambiguous and must be construed in favor of the claimant. _Id._ (internal quotation marks omitted).

Here, the Plan does not detail the process for appointing the appeal committee. Without guidance from the Plan, each party offers its own definition of "appoint." Because the Board outsourced appeals to Aetna, Appellee seeks to

13

exclude "outsource" from this definition while Appellant seeks to include "outsource" as part of its definition. Appellee argues that appointment requires a selection or designation process designed to fill an office; this definition does not include outsourcing because outsourcing is simply the channeling of work from one place to another. Appellant responds that the semantic differences between "appoint" and "outsource" are meaningless, claiming the terms are functionally indistinguishable.

Both definitions prove reasonable. On one hand, "appoint" means there is some selection and designation process. See, e.g., The American Heritage Dictionary 87 (5th ed. 2011) (defining "appoint" as "[t]o select or designate to fill an office or a position"); see also Garner's Dictionary of Legal Usage 269 (3d ed. 2011) ("Appoint implies selection that may be subject to others' approval but will not require a general vote of the electorate."). On the other hand, "appoint" may mean assignment of a job without any process-related component, which potentially includes outsourcing. See, e.g., New Oxford American Dictionary 76 (3d ed. 2010) (defining "appoint" as "assign a job or role to (someone)"); see also New Oxford American Dictionary 1246 (3d ed. 2010) (defining "outsource" as "obtain (goods or a service) from an outside or foreign supplier, esp. in place of an internal source").

14

When, as here, the terminology is reasonably susceptible to either construction, we construe the language in favor of the claimant. See Johnson, 716 F.3d at 820. Accordingly, "appoint" incorporates the notion of a selection and designation process. "Appoint" does not include outsourcing, which is a mere funneling of work. Therefore, in order to comply with the Plan the Board needed to actually designate Aetna as the appeal committee. The evidence does not demonstrate that the Board exercised this power. Instead, the Board merely approved an internal memorandum from FedEx's Employee Benefits Department recommending that all appeals be farmed out to Aetna; there was not a process indicating a selection and designation of a new appeal committee. Indeed, the Board's minutes do not expressly mention Aetna, much less the Aetna Appeal Review Committee that decided Appellee's appeal. So the Board did not actually appoint Aetna as the appeal committee and thus did not give it discretionary authority over appeals.[4]

---

[4] To the extent the minutes can be construed as actually approving the outsourcing of appeals to Aetna, we note that Aetna itself is not a committee as that term is commonly understood. See New Oxford American Dictionary 349 (3d ed. 2010) (defining "committee" as a "a group of people appointed for a specific function"); see also Black's Law Dictionary 309 (9th ed. 2009) (defining "committee" as "a subordinate group to which a[n] . . . organization refers business for consideration, investigation, oversight, or action"). Rather, Aetna itself (Continued)

15

3.

Alternatively, Appellant claims the Plan was effectively amended because the Board disbanded the Benefit Review Committee and outsourced appeals to Aetna and because FedEx and Aetna amended their service agreement. Section 7.1 of the Plan outlines the amendment process:

> The Sponsoring Employers shall have the right at any time to modify, alter or amend the Plan in whole or in part by an instrument in writing duly executed by officers of each of the Sponsoring Employers or as reflected in the minutes of FedEx Corporation's board of directors or any committee thereof or as reflected in the minutes of the [Board].

J.A. 463.[5]

Appellant contends this modified section 5.3(c) of the Plan, which covers appointment of the appeal committee, because it dissolved the Benefit Review Committee and moved discretionary appellate review to Aetna.

---

later created a committee, the Aetna Appeal Review Committee, to review and decide appeals. Construing the terms of the Plan in Appellee's favor, the distinction between Aetna generally and the Aetna Appeal Review Committee is not without a difference.

[5] The Plan defines "Sponsoring Employee" as "Federal Express Corporation, FedEx Corporation, FedEx Trade Networks Transport & Brokerage, Inc., FedEx Trade Networks Trade Services, Inc., World Tariff, Ltd., FedEx Customer Information Services, Inc., and holding company employees only of FedEx Corporate Services, Inc., FedEx Trade Networks, Inc. and FedEx Freight Corporation." J.A. at 414.

16

Amendments or modifications of ERISA plans "must be implemented in conformity with the formal amendment procedures and must be in writing." Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 58–59 (4th Cir. 1992). These requirements "are designed to give both the plan's participants and administrators a clear understanding of their rights and obligations, and they do not authorize oral or implied modifications to a written plan." Singer v. Black & Decker Corp., 964 F.2d 1449, 1453–54 (4th Cir. 1992) (Wilkinson, J., concurring) (citations omitted) (internal quotation marks omitted). Further, these requirements emphasize the importance of clarity; amendments and modifications cannot be made cavalierly.

It is not enough for a writing to suggest or imply an amendment or modification of an ERISA plan; the writing must be accompanied by a clear intent to amend or modify the plan. See Biggers v. Wittek Indus. Inc., 4 F.3d 291, 295–96 (4th Cir. 1993); see also Coffin v. Bowater Inc., 501 F.3d 80, 91–92 (1st Cir. 2007) ("[A]n ERISA plan amendment . . . must clearly alert the parties that the plan is being amended . . . ."). Specific language regarding amendment or modification and specific references to amended or modified sections of a plan, for example, evidence a clear intent to amend or modify a plan. See, e.g., Coffin, 501 F.3d at 90; Souza v. R.I. Carpenter's

17

Pension Plan, No. Civ.A. 05-186S, 2006 WL 2559483, at *5 (D.R.I. Aug. 31, 2006).

Appellant claims modification was effected in this case via the minutes from the Board's meeting on July 14, 2008, which read as follows:

> The [Board] next reviewed a proposal from the Federal Express Corporation Benefits Appeals group to outsource remaining long-term disability appeals effective September 1, 2008, and effectively cease the operation of the Benefit Review Committee. . . . Following a thorough discussion, the [Board] voted to approve the recommendation.

J.A. at 63. However, the Board did not discuss any intent to modify the Plan; the Board did not mention any portion of the Plan that was amended; the Board did not mention the Plan at all. Appellant asks us to find amendment is implied, readily admitting that the minutes alone would support only modification by implication. See Oral Argument at 5:00, Bilheimer v. Fed. Express Corp., No. 13-1859, available at http://coop.ca4. uscourts.gov/OAarchive/mp3/13-1859-20150326.mp3. We refuse to allow amendment by implication. See Singer, 964 F.2d at 1453–54 (Wilkinson, J., concurring).[6]

---

[6] Appellant asks us to go beyond the Board's minutes, imploring us to consider the minutes in conjunction with the amended service agreement executed by FedEx and Aetna. But the Plan does not permit the amended service agreement to effect modification -- the amended agreement is not in the minutes and was not executed by all of the requisite parties. The only
(Continued)

18

Because the Plan was not actually amended, the district court correctly determined that Aetna was not given discretionary authority to review appeals. Accordingly, the district court applied the proper standard of review, reviewing Aetna's decision de novo.

B.

We now address the district court's conclusion that Appellee is totally disabled. Under the Plan, an individual who suffers an "occupational disability" can receive benefits for two years, whereas an individual who suffers a "total disability" is not subject to the two-year limitation. The Plan defines "total disability" as "the complete inability of a Covered Employee, because of medically-determinable physical or functional impairment (other than impairment caused by a mental or nervous condition or a Chemical Dependency), to engage in any compensable employment for twenty-five hours per week." J.A.

---

Sponsoring Employer that was a signatory to the amended agreement was FedEx. In any event, the impact non-plan documents -- like the amended agreement -- can have on an ERISA plan is questionable. See CIGNA Corp. v. Amara, 131 S. Ct. 1866, 1878 (2011) ("[W]e conclude that the summary documents, important as they are, provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan . . . ."); Cosey, 735 F.3d at 170 n.8 ("[I]n the ERISA context, the Supreme Court's decision in Amara has cast serious doubt on whether non-plan documents can be used to interpret a plan's language.").

414. After reviewing the expert opinions submitted by the parties and affording greater credit to the experts who actually treated and examined Appellee, the district court determined Appellee was totally disabled.

1.

At the outset, Appellant claims the district court's interpretation of "compensable employment" was erroneous; we disagree. The district court refused to narrowly construe this term, applying the Sixth Circuit's interpretation of a similar phrase:

> [T]he phrase "prevented from engaging in every business or occupation" cannot be construed so narrowly that an individual must be utterly helpless to be considered disabled and that nominal employment, such as selling peanuts or pencils which would yield only a pittance, does not constitute a "business or occupation." Instead, a claimant's entitlement to payments based on a claim of "total disability" must be based on the claimant's ability to pursue "gainful employment in light of all the circumstances."

VanderKlok v. Provident Life & Accident Ins. Co. Inc., 956 F.2d 610, 614–15 (6th Cir. 1992) (quoting Torix v. Ball Corp., 862 F.2d 1428, 1431 (10th Cir. 1988)).

ERISA is "designed to promote the interests of employees and their beneficiaries in employee benefits plans," so we seek to respect and fulfill the reasonable expectations of ERISA plan participants. Lown v. Cont'l Cas. Co., 238 F.3d 543,

547 (4th Cir. 2001) (internal quotation marks omitted); see also, e.g., Johnson, 716 F.3d at 820 ("Our inquiry . . . requires us to consider what a reasonable person in the position of the participant would have understood those terms to mean." (internal quotation marks omitted)).

Reasonable ERISA plan participants would understand "compensable employment" as meaning "meaningful, gainful employment"; they would not expect this phrase to mean "any job at any place with any pay." The VanderKlok court and the district court recognized this expectation and sought to avoid undue economic hardship, furthering the goals of ERISA and promoting the interests of plan participants. Therefore, we conclude the district court properly interpreted the scope of the term "compensable employment."

2.

Next we review the district court's factual determination that Appellee is totally disabled. We review the district court's factual findings for clear error. We "will not reverse a lower court's finding of fact simply because we would have decided the case differently." Easley v. Cromartie, 532 U.S. 234, 242 (2001) (internal quotation marks omitted).

We ask instead whether we are "left with the definite and firm conviction that a mistake has been committed." United States v. Wooden, 693 F.3d 440, 451 (4th Cir. 2012) (internal

21

quotation marks omitted).  "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently."  Anderson, 470 U.S. at 573–74.  We may also find clear error "when a court makes findings without properly taking into account substantial evidence to the contrary."  United States v. Caporale, 701 F.3d 128, 140 (4th Cir. 2012) (internal quotation marks omitted).

To be entitled to benefits, Appellee must be precluded from any compensable employment for twenty-five hours per week, which must be "substantiated by significant objective findings." J.A. 406.  "[S]ignificant objective findings . . . are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms."  Id. at 406–07.  This case turns on whether Appellee could engage in any compensable employment. The district court was faced with dueling experts in this regard.

Although Appellee's experts were fewer in number, they had actually examined him: "Dr. Morris conducted a comprehensive physical examination of [Appellee]" and "Dr. Rougeou treated [Appellee] at least six times [and] had the opportunity to

22

directly observe [his] physical condition." J.A. 19. Dr. Morris noted several limitations on Appellee's ability to perform in the workplace, "conclud[ing] that in an eight-hour workday, [Appellee] could be expected to stand and/or walk for two hours at most, and to sit for four hours maximum, with a break every hour." Id. Based on his observations and examinations, Dr. Rougeou determined Appellee was totally disabled:

> It is my opinion, based upon my medical education and experience and based upon my specific knowledge of [Appellee's] problems and treatment history that he is and has been completely and totally disabled from performing any employment on a part-time (twenty-five hours per week) or full-time basis, consistent with the definition of disability above. I render my opinion based upon the cumulative effect of [Appellee's] above described objectively diagnosed medical problems and the subjective symptoms he suffers.

Id. at 91.

On the other side of the battle of the experts were several peer review physicians hired by Appellant. Appellant's retained experts all agreed Appellee was not totally disabled. However, none of these experts directly observed Appellee, conducted a physical examination of Appellee, or contacted Appellee's treating physicians.

Tasked with weighing the facts, the district court discounted the opinions of Appellant's experts and afforded

23

greater weight to the opinions of Dr. Morris and Dr. Rougeou. The district court determined that the opinions of Dr. Morris and Dr. Rougeou deserved more weight because both physicians "observed [Appellee] in person before opining upon [his] ability to work." J.A. 19. The retained experts lacked this hands-on experience, lessening the persuasive impact of their opinions. Based on the value ascribed to the various experts, the district court concluded that "the weight of the evidence indicates that [Appellee] has the complete inability to engage in any compensable employment for twenty-five hours per week and is thus totally disabled." Id. at 23.

There is no clear error here. The district court's account of the evidence is plausible, and nothing indicates the district court failed to account for substantial evidence to the contrary. Although a district court cannot require an administrator to assign certain weight to certain expert opinions, the district court was entitled to determine the weight of each expert's opinion and to afford more weight to the opinions of treating physicians. Compare Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts

24

with a treating physician's evaluation."), with Turner v. Ret. & Benefit Plans Comm. Robert Bosch Corp., 585 F. Supp. 2d 692, 707 (D.S.C. 2007) (finding a court may ascribe greater weight to opinions of treating physicians based on cumulative review of the evidence).

Appellant claims the specific limitations outlined by Dr. Morris belie the district court's findings. But the district court discussed these limitations, concluding "that the limitations articulated by Dr. Morris would preclude [Appellee] from engaging in any compensable employment for twenty-five hours per week." J.A. 23. Although the district court did not entertain a prolonged discussion of why these findings did not undermine its conclusion, it cannot be said to have ignored these limitations. Regardless of how we may view these limitations, we cannot re-weigh this evidence and usurp the district court's role as finder of fact.

Accordingly, we hold that the district court did not err by determining Appellee fell within the Plan's definition of "totally disabled."

## IV.

We conclude that the district court applied the appropriate standard of review when reviewing Aetna's denial of benefits. We further conclude that the district court's

25

decision that Appellee is entitled to benefits under the Plan was not erroneous.

<u>AFFIRMED</u>